UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

SHARISTA GILES,                          )
                                         )
              Plaintiff,                 )
                                         )
v.                                       )        No.: 3:12-CV-645-TAV-CCS
                                         )
HOMETOWN FOLKS, LLC, and                 )
JEFF BEALER,                             )
                                         )
              Defendants.                )

## MEMORANDUM OPINION

This civil matter is before the Court on defendants' motions for summary

judgment [Docs. 22, 25].  Plaintiff filed a joint response [Doc. 32], and defendant

Hometown Folks, LLC ("Hometown Folks") replied [Doc. 33].  After review of the

record and considering the applicable law, the Court will grant the motions for summary

judgment and dismiss this action.

## I.      Background

Hometown Folks hired plaintiff Sharista Giles on August 9, 2011, to work as a

cashier at its restaurant in Sweetwater, Tennessee [Doc. 26-1 p. 13].  At the time of her

hiring, Hometown Folks issued plaintiff a copy of the company's harassment prevention

policy [*Id.* at 21–23].  The policy prohibits harassment relating to an employee's sex and

requires employees subject to harassment to report such harassment to the human

resources department [*Id.* at 63].

In November 2011, defendant Jeff Bealer became an assistant manager at the restaurant where plaintiff worked [*Id.* at 16–17, 20–21, 24–26; Doc. 26-2 ¶ 3].  He worked under Mike Tomlinson, who was the restaurant manager throughout plaintiff's employment [*See* Doc. 26-1 p. 14].

According to plaintiff, in November or December 2011, Bealer made a remark about plaintiff's "butt and . . . pants and stuff," but plaintiff did not report this comment to the human resources department [*Id.* at 37–38, 42–43; Doc. 32-1 p. 72].  Around the same time, Bealer also made a remark that "he loved watching [plaintiff's] a** whenever [she] walked" [Doc. 26-1 p. 39, 43–44] and he made a remark about her "boob" when her blouse had come unbuttoned [*Id.* at 40–41, 44].  While there is some dispute about it, plaintiff asserts that she reported these remarks to Tomlinson [*See* Doc. 32-1 p. 52–72].

On December 19, 2011, while working at the drive-through window area of the restaurant, Bealer poked plaintiff's bottom with a grease pencil.  He then assaulted her again near the ice cream machine, where he grabbed her belt buckle and touched her breast ("the December 19 incident") [*Id.* at 27].  Portions of this incident were captured by video [Doc. 26-3].

On December 20, 2011, plaintiff reported to work at 8:00 a.m., and three or four hours into her shift, she reported the December 19 incident to Tomlinson, who then reported the incident to the human resources department [Doc. 26-1 p. 28; Doc. 26-2 ¶ 4].  Bealer was discharged the same day [Doc. 26-2 ¶ 5].  Yet, plaintiff asserts that Bealer made comments to her, although not sexual in nature, after reporting the December 19

2

incident [Doc. 32-1 p. 30–33], and after these comments were made, Tomlinson indicated that he had not yet spoken to Bealer [*Id.* at 34–36]. Also on December 20, plaintiff reported the incident to the Sweetwater Police Department [Doc. 32-2].

Plaintiff continued working for Hometown Folks, although in January 2012, she enrolled as a full-time college student [Doc. 26-1 p. 35]. The same week of the December 19 incident, plaintiff was scheduled to work 36.5 hours [Doc. 26-2 ¶ 6]. The next two weeks she was scheduled to work 39.5 hours and 38 hours, respectively [*Id.* ¶¶ 7–8]. Plaintiff, however, requested that her work schedule be changed because of her class schedule [Doc. 26-1 p. 35–36], and Tomlinson attempted to schedule plaintiff's shifts to accommodate her class schedule [Doc. 26-4 ¶¶ 7–8]. Plaintiff did not report to work on January 14, 15, 25, or 27, or February 1, 2012 [Doc. 26-2 ¶ 9]. On February 3, 2012, plaintiff resigned from her employment, asserting that her hours had been drastically reduced [Doc. 26-1 p. 12–13; Doc. 32-1 p. 39–43; Doc. 26-2 ¶ 10].

On December 13, 2012, plaintiff commenced this action [Doc. 1]. Plaintiff asserts that Bealer created a hostile work environment and Hometown Folks is liable for Bealer's alleged sexual harassment and for retaliation, in violation of the Tennessee Human Rights Act, Tennessee Code Annotated § 4-21-101, et seq. ("THRA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq. ("Title VII"). Plaintiff also asserts common law claims for intentional and negligent infliction of emotional distress.[1]

---

[1] Plaintiff's complaint does not clearly delineate her claims. The Court adopts defendants' characterization of plaintiff's claims, which plaintiff does not seem to dispute.

## II.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.   Plaintiff's Title VII and THRA Claims Against Bealer

Bealer argues that he is entitled to summary judgment on plaintiff's Title VII and THRA claims against him because he is a supervisor and thus not subject to liability [Doc. 23]. Plaintiff, despite having filed a joint response to the motions for summary judgment, fails to address this argument [*See* Doc. 32].

Title VII makes it unlawful for an "employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "Employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person." 42 U.S.C. § 2000e(b). Although Title VII does not define "any agent," the Sixth Circuit has declined

5

to impose individual liability on supervisors.  *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405–06 (6th Cir. 1997) (finding that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII"). Given the plaintiff's allegations and the undisputed facts in the record regarding Bealer's position, the Court finds Bealer is not an "employer" under Title VII and thus cannot be held liable under Title VII.

Under the THRA, however, "a supervisor is individually liable under a hostile work environment theory" when certain factors are established.  *See Steele v. Superior Home Health Care of Chattanooga*, No. 03A01-9709-CH-00395, 1998 Tenn. App. LEXIS 762, at *23–24 (Tenn. Ct. App. Nov. 10, 1998).  Those factors are: "(1) that a hostile work environment existed; (2) that the [supervisor] acted affirmatively to aid, abet, incite, compel or command an employer not to take remedial action to the hostile work environment; and (3) that the employer engaged in employment-related discrimination by failing to take adequate remedial action."  *Id.* (citation omitted).  Even assuming a hostile work environment existed, a finding the Court does not make, plaintiff has not pointed to any evidence in the record to suggest that Bealer acted to aid, abet, incite, compel, or command Hometown Folks not to take remedial action.  *Compare id.* (finding statement from harasser to "his own supervisor . . . that he did not make the sexually explicit remark originally complained of by [the plaintiff]," "was obviously designed to cover up his conduct and thus discourage [his supervisor and defendant

employer] from taking any action to remedy the hostile environment"). Thus, the Court will dismiss plaintiff's THRA claims against Bealer.

## IV. Plaintiff's Title VII and THRA Claims Against Hometown Folks

Plaintiff asserts claims of sexual harassment/hostile work environment and retaliation against Hometown Folks.

### A. Claim for Sexual Harassment/Hostile Work Environment

In order to establish a claim of sexual harassment/hostile work environment under either Title VII or the THRA, a plaintiff must prove that: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her gender; (4) the harassment created a hostile work environment; and (5) there is a basis for employer liability. *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008).[2] Where no tangible employment action is taken, an employer may avoid liability by establishing (1) that the employer "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 766 (6th Cir. 2008).

---

[2] The Tennessee Supreme Court has recognized that the THRA is intended "to be coextensive with federal law." *Parker v. Warren Co. Util. Dist.*, 2 S.W.3d 170, 172 (Tenn. 1999).

Plaintiff asserts that Hometown Folks cannot avail itself of the *Faragher/Ellerth* defense because she was constructively discharged. She asserts that "[t]he combination of drastically reduced hours and the continued possibility of being exposed to other persons with the propensities of Mr. Bealer, [sic] would place any reasonable person in a position in which they must resign their position" [Doc. 32 p. 6]. The Court treats this argument as plaintiff equating her alleged constructive discharge with a tangible employment action.[3]

To the extent plaintiff argues that she was constructively discharged, the Court finds that plaintiff has not pointed to evidence from which a reasonable juror could find that Hometown Folks knowingly permitted conditions of employment so intolerable that any reasonable person subject to such conditions would necessarily resign. *See Logan v. Denny's, Inc.*, 259 F.3d 558, 568–69 (6th Cir. 2001) ("To demonstrate a constructive discharge, Plaintiff must adduce evidence to show that 1) the employer . . . deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit." (citation and internal quotation marks omitted)); *see also Ford v. Gen. Motors Corp.*, 305 F.3d 545, 554 (6th Cir. 2002) (noting that "[a] constructive discharge exists if working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign" (citation and internal quotation

---

[3] A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761.

marks omitted)). Plaintiff states that there was a possibility of working with other persons with the propensities of Bealer, but this statement is nothing more than speculation, *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (finding that "conclusory statements are not sufficient to survive *any* motion for summary judgment"), and Bealer was terminated the day after the December 19 incident. And plaintiff states that Hometown Folks drastically reduced her work hours the week following her complaint about the December 19 incident [Doc. 26-1 p. 29–32; Doc. 32-1 p. 41–43]. Yet, undisputed records indicate that there was no change in the number of hours that plaintiff was scheduled to work in the weeks following the December 19 incident [Doc. 26-2 ¶¶ 6–8]. Plaintiff's work schedule was reduced in January 2012, but that reduction was a result of plaintiff's request due to her school schedule [Doc. 26-2 p. 9, 10, 33–36; Doc. 32-1 p. 39–42].

Thus having found that Hometown Folks did not constructively discharge plaintiff—i.e., that there was no tangible employment action—the Court turns to analyzing the *Faragher*/*Ellerth* defense.[4] To take advantage of this defense, Hometown Folks must establish (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior by Bealer and (2) that plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Hometown Folks or to avoid harm otherwise.

---

[4] For purposes of its analysis, the Court assumes that Bealer's remarks created a hostile work environment.

It is undisputed that Hometown Folks had a policy in place that strictly limited harassment and outlined the manner in which an employee could report harassment, which included reporting harassment to the human resources department. The Court thus finds that Hometown Folks exercised reasonable care to prevent and correct sexually harassing behavior. *Collette v. Stein-Mart, Inc.*, 126 F. A'ppx 678, 685 (6th Cir. 2005) ("[G]iving employees written notice of [anti-harassment] policies and how they are enforced constitutes an adequate general preventive measure."); *Leugers v. Pinkerton Security & Investigative Servs.*, 205 F.3d 1340, at *3 (unpublished table decision) (6th Cir. Feb. 3, 2000) (defendant satisfied first element of defense by demonstrating that it had and distributed an anti-harassment policy with a complaint procedure in place that included ways in which to bypass an offending supervisor); *Carver v. Waste Connections of Tenn., Inc.*, No. 3:04-cv-263, 2006 WL 270286, at *14 (E.D. Tenn. Feb. 2, 2006) (finding first element of defense satisfied where plaintiff received copy of policy and read it).

Regarding the alleged incidents of harassment prior to the December 19 incident, plaintiff states she reported the harassment to Tomlinson. While there is some debate about whether plaintiff made such reports, the Court assumes for purposes of its analysis that plaintiff did report Bealer's comments to Tomlinson prior to December 19, 2011. Those reports, according to plaintiff's own testimony, were only that Bealer made plaintiff feel "uncomfortable," and plaintiff requested that Tomlinson change her schedule so that she did not have to work with Bealer [Doc. 26-1 p. 47–51; Doc. 32-1 p.

54–64].  And according to plaintiff, Tomlinson honored that request and modified her schedule [Doc. 32-1 p. 69].

Turning to the December 19 incident, Hometown Folks began an investigation after receiving plaintiff's complaint [Doc. 26-2 ¶ 4], and discharged Bealer the very next day.  While plaintiff claims Tomlinson delayed in speaking to Bealer and she was thus subject to additional comments from Bealer [Doc. 32 p. 5], the plaintiff herself states that the comments were not sexually harassing and that she requested Tomlinson to refrain from speaking with Bealer until she completed her shift [Doc. 33-1 p. 3–4, 6–7].

Accordingly, the Court finds that the undisputed evidence compels application of the *Faragher/Ellerth* defense here.  The Court will dismiss plaintiff's claim for sexual harassment against Hometown Folks.  *See Collette*, 126 F. App'x at 686 (affirming summary judgment, finding employer's response to be both prompt and corrective where harasser was terminated six days after the complaint); *Stevens v. U.S. Postal Serv.*, 21 F. App'x 261, 264 (6th Cir. 2001) (affirming summary judgment, finding the employer's response to be both prompt and corrective where harasser was terminated three days after the complaint).

## B.    Claim for Retaliation

A plaintiff may establish retaliation either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation.  *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010).  Plaintiff here does not present any direct evidence of retaliation.  Thus, the Court must

examine both the Title VII and the THRA claims under the same burden-shifting framework used to analyze discrimination claims; that is the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Id.*; *see also Kessler v. Riccardi*, 363 F. App'x 350, 355 (6th Cir. 2010).

Under that framework, plaintiff must make out her prima facie case of retaliation by showing: (1) that she engaged in protected conduct; (2) that Hometown Folks had knowledge of her protected activity; (3) that Hometown Folks took an adverse employment action against her; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Id.* at 491–92; *see also Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007). If plaintiff establishes her prima facie case, then the burden of production shifts to Hometown Folks to "articulate some legitimate, nondiscriminatory reason for [its action]." *Spengler*, at 492 (alteration in original) (citation and internal quotation marks omitted). Then, to the extent defendant successfully articulates a legitimate, nondiscriminatory reason for its action, plaintiff must demonstrate defendant's "proffered reason was not the true reason for the employment decision." *Id.* (citation and internal quotation marks omitted).

While "[t]he burden of establishing a prima facie case in a retaliation action is not onerous," *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (emphasis omitted), the Court finds that the undisputed evidence demonstrates that plaintiff cannot establish a prima facie case. Plaintiff alleges that Hometown Folks retaliated against her

12

by drastically reducing her work hours the week following her complaint about the December 19 incident [Doc. 26-1 p. 29–32; Doc. 32-1 p, 41–43]. Yet, undisputed records submitted to the Court indicate that there was no change in the number of hours that plaintiff was scheduled to work in the weeks following the December 19 incident [Doc. 26-2 ¶¶ 6–8]. Plaintiff's work schedule was reduced in January 2012, but it was done at her request due to her school schedule [Doc. 26-2 p. 9, 10, 33–36; Doc. 32-1 p. 39–42]. Thus, Hometown Folks did not take an adverse employment against plaintiff and plaintiff's claim for retaliation must be dismissed.

## V. Plaintiff's Claims for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress

To be successful on a claim for intentional infliction of emotional distress under Tennessee law, a plaintiff must demonstrate "that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). "The elements of a claim for negligent infliction of emotional distress include the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation." *Id.* at 206 (footnote omitted). "In addition, the plaintiff must prove that the defendant's conduct caused a serious or severe emotional injury." *Id.* (footnote omitted). "Thus, both actions for intentional infliction of emotional distress and negligent infliction of emotional distress (including all three 'subspecies' of negligent infliction: 'stand-alone,' 'parasitic,'

13

and 'bystander') require an identical element: a showing that the plaintiff suffered a serious mental injury resulting from the defendant's conduct." *Id.*

Hometown Folks argues, with respect to any claim against it for negligent infliction of emotional distress, that the claim is barred by the exclusive remedy provisions of Tennessee's workers' compensation statute. *See* Tennessee Code Annotated § 50-6-108(a). Plaintiff did not refute this argument, and upon review, the Court agrees with defendant. *See Bellomy v. Autozone, Inc.*, No. E2009-00351-COA-R3-CV, 2009 WL 4059158, at *11 (Tenn. Ct. App. Nov. 24, 2009) (affirming summary judgment, finding the plaintiff's negligent infliction of emotional distress claim barred by the exclusive remedy rule). Thus, the Court will dismiss plaintiff's negligent infliction of emotional distress claim against Hometown Folks for this reason.

That leaves the intentional infliction of emotional distress claims against Bealer and Hometown Folks and the negligent infliction of emotional distress claim against Bealer. Bealer asserts, as does Hometown Folks to a lesser degree, that plaintiff did not suffer serious mental injury.

Serious mental injury "occurs where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Rogers*, 367 S.W.3d at 210 (internal quotation marks omitted). "'Unable to cope with the mental stress engendered' means that the plaintiff

14

has demonstrated, by means of [certain factors] or other pertinent evidence, that he or she has suffered significant impairment in his or her daily life resulting from the defendant's extreme and outrageous conduct." *Id.* Those factors include:

> (1) Evidence of physiological manifestations of emotional distress, including but not limited to nausea, vomiting, headaches, severe weight loss or gain, and the like;

> (2) Evidence of psychological manifestations of emotional distress, including but not limited to sleeplessness, depression, anxiety, crying spells or emotional outbursts, nightmares, drug and/or alcohol abuse, and unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry;

> (3) Evidence that the plaintiff sought medical treatment, was diagnosed with a medical or psychiatric disorder such as post-traumatic stress disorder, clinical depression, traumatically induced neurosis or psychosis, or phobia, and/or was prescribed medication;

> (4) Evidence regarding the duration and intensity of the claimant's physiological symptoms, psychological symptoms, and medical treatment;

> (5) Other evidence that the defendant's conduct caused the plaintiff to suffer significant impairment in his or her daily functioning; and

> (6) In certain instances, the extreme and outrageous character of the defendant's conduct is itself important evidence of serious mental injury.

*Id.* at 209–10. Expert testimony is not required. *Id.* at 208.

Regarding plaintiff's injury, plaintiff asserts she was in shock after the December 19 incident and that she was upset and crying [Doc. 32-1 p. 4, 15–16; Doc. 23-1 p. 10]. She also saw a counselor no more than three times, for approximately one hour each time

15

[Doc. 23-1 p. 2; Doc. 32-1 p. 3]. The counselor did not prescribe any medication, and plaintiff did not otherwise take any medication as a result of the alleged outrageous conduct [Doc. 23-1 p. 3–4].

While the Court does not doubt that plaintiff experienced some mental injury, plaintiff has not raised a genuine issue of material fact as to whether her injuries are "serious mental injury" as defined by Tennessee law. Put another way, the Court finds that plaintiff has not demonstrated that she has suffered significant impairment in her daily life resulting from the alleged outrageous conduct of defendants. *Accord Rogers*, 367 S.W.3d at 210–211 (finding plaintiff did not suffer serious mental injury where she was "very, very emotional, very tearful"); *Nesbitt v. Wilkins Tepton, P.A.*, No. 3:11-cv-0574, 2012 U.S. Dist. LEXIS 115407, at *30–32 (M.D. Tenn. Aug. 16, 2012) (finding no serious mental injury for a plaintiff who suffered extreme stress during pregnancy, cried, and suffered from anxiety; for a plaintiff who became angry at family members, was not able to function effectively as a friend, took medication, and suffered nightmares; nor for a plaintiff who zoned out at work and would get upset and tearful when talking about work). The Court thus finds that plaintiff's claims for intentional and negligent infliction of emotional distress shall be dismissed.

## VI. Conclusion

For the foregoing reasons, Defendant Jeff Bealer's Motion for Summary Judgment [Doc. 22] and Defendant Hometown Folks' Motion for Summary Judgment [Doc. 25]

will be **GRANTED**.  The Court will **DISMISS** this action and direct the Clerk of Court to **CLOSE** this case.

      ORDER ACCORDINGLY.


                    s/ Thomas A. Varlan
                    CHIEF UNITED STATES DISTRICT JUDGE